## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

|  |  |  |
|---|---|---|
| INTERNATIONAL BROMINATED | : | |
| SOLVENTS ASSOCIATION; | : | |
| NATIONAL MINING | : | |
| ASSOCIATION; AEROSAFE; | : | |
| PRODUCTS, INC.; and ANCHOR | : | |
| GLASS CONTAINER CORP., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | 5:04CV394 (DF) |
| | : | |
| AMERICAN CONFERENCE OF | : | |
| GOVERNMENTAL INDUSTRIAL | : | |
| HYGIENISTS, INC.; ELAINE CHAO, | : | |
| Secretary, UNITED STATES | : | |
| DEPARTMENT OF LABOR, | : | |
| | : | |
| Defendants. | : | |

## A M E N D E D   O R D E R[1]

The parties have raised a number of discovery-related issues that must be

resolved before the Court can enter a Rule 16(b) scheduling order permitting this

case to move forward.  This order will address the following issues: (1) American

Conference of Governmental Industrial Hygienists's ("ACGIH") Motion to Strike

---

[1] This Order has been amended in accordance with Rule 5(a)(3) of the Federal
Rules of Appellate Procedure.

(tab 92) Plaintiffs' Uniform Deceptive Trade Practices Act ("UDTPA") claim for failure to comply with Georgia's anti-SLAPP statute.  O.C.G.A. § 9-11-11.1 (Lexis Supp. 2004); (2) Department of Labor's ("DOL") argument that Plaintiffs' APA claim must be reviewed solely on the administrative record, without the aid of newly developed discovery; (3) Plaintiffs' motion to increase the limits of written interrogatories, requests for admission, and requests for production prescribed by this Court's Local Rules and the Federal Rules of Civil Procedure (tab 90); and (4) The discovery format (whether the discovery process will be unified or bifurcated). Each issue will be addressed in turn.

I.    **ACGIH's Motion to Strike**

ACGIH moves to strike Plaintiffs' UDTPA claim pursuant to Georgia's anti-SLAPP (Strategic Litigation Against Public Participation) statute, O.C.G.A. § 9-11-11.1 (Lexis Supp. 2004).  ACGIH argues that this claim must be stricken because Plaintiffs have failed to verify their allegation as required by the statute.   In opposing ACGIH's motion to strike, Plaintiffs advance several arguments, one of which the Court must address as a threshold matter: Whether Georgia's anti-SLAPP statute applies in federal court.

O.C.G.A. § 9-11-11.1(b) provides that:

For any claim asserted against any person or entity arising from an act
by that person or entity which could reasonably be construed as an act
in furtherance of the right of free speech . . . in connection with an issue
of public interest or concern, both the party asserting the claim and the
party's attorney of record . . . shall be required to file . . . a written
verification under oath as set forth in Code Section 9-10-113. . . . *If the
claim is not verified as required by this subsection, it shall be stricken* unless
it is verified within ten days after the omission is called to the attention
of the party asserting the claim.

Subsection (d) of the statute further provides that:

All discovery . . . in the action shall be stayed upon the filing of a
motion to dismiss or a motion to strike made pursuant to subsection (b)
of this Code section.

Designed to prevent abusive litigation from chilling significant First
Amendment rights, Georgia's anti-SLAPP statute contains "several procedural
safeguards." ***Providence Const. Co. v. Bauer***, 494 S.E.2d 527, 528 (Ga. Ct. App. 1997).
Claims impinging on an act that may "reasonably be construed as an act in
furtherance of the right of free speech" must be verified under oath.  Both the party
bringing the claim and the party's attorney must certify that (1) they have read the
claim; (2) the claim, to the best of their knowledge, information, and belief formed
after a reasonable inquiry, is well grounded in fact and warranted by existing law
or a good-faith argument for the extension, modification, or reversal of existing law;
(3) the act forming the basis of the claim is not a privileged communication [under

O.C.G.A. § 51-5-7]; and the claim is not interposed for any improper purpose.  *See*

O.C.G.A. § 9-11-11.1(b).

Plaintiffs argue that the anti-SLAPP statute is not applicable in federal court

because its requirements are in conflict with, and therefore must yield to, the Federal

Rules of Civil Procedure.[2]  *See **Hanna v. Plumer**,* 380 U.S. 460 (1965); *see also **Cohen***

***v. Office Depot, Inc.**,* 184 F.3d 1292 (11th Cir. 1999), *vacated in part on other grounds*,

204 F.3d 1069.  This issue has never been addressed by the Eleventh Circuit.[3]

The Supreme Court in ***Hanna*** developed a test for determining whether a

Federal Rule of Civil Procedure will prevail over, and displace, a state law.  As

explained by the Eleventh Circuit:

> [T]he court must ask whether the state law provision conflicts with a
> federal procedural rule.  If it does, the federal procedural rule applies
> and the state provision does not. . . . The only exception is where the
> advisory committee, the Supreme Court, and Congress have
> collectively erred and adopted a federal procedural rule that is either
> unconstitutional or should not have been adopted under the Rules
> Enabling Act because it is a matter of substantive law.

---

[2] The need to choose between applying a state law or a Federal Rule of Civil
Procedure may arise in either a diversity-of-citizenship case or a federal-question case
involving a supplemental state-law claim.  The instant case is of the latter variety.

[3] Two district courts in the Northern District of Georgia have, without analysis,
addressed the applicability of the anti-SLAPP statute in federal court.  *See **Buckley v.
DirecTV, Inc.**,* 276 F. Supp. 2d 1271 (N.D. Ga. 2003) (relying on an interpretation of
California's anti-SLAPP statute in concluding that the Georgia statute is applicable);
***AirTran Airlines, Inc. v. Plain Dealer Pub. Co.**,* 66 F. Supp. 2d 1355 (N.D. Ga. 1999)
(assuming arguendo that the statute applies).  The Court finds these cases to be unhelpful.

*Cohen*, 184 F.3d at 1296-97.

According to the Supreme Court, the key inquiry in determining if a state law conflicts with a Federal Rule of Procedure is "whether the scope of the Federal Rule in fact is sufficiently broad to control the issue before the Court." ***Walker v. Armco Steel Corp.***, 446 U.S. 740, 749-750 (1980). "Typically, courts deem a federal rule sufficiently broad to control the issue when the court *cannot give effect to both the federal and state rules.*" (emphasis added)  17A James Wm. Moore et al., *Moore's Federal Practice*, § 124.03[1] (Matthew Bender 3d ed. 2004).

Plaintiffs argue that the anti-SLAPP statute conflicts with Rule 8 of the Federal Rules of Civil Procedure because it imposes "additional constraints and requirements on pleadings," above and beyond Rule 8's requirement that a claim and the grounds for relief be contained in a "short and plain statement." Essentially, Plaintiffs make the same heightened-pleading argument that has been specifically rejected by the Eleventh Circuit. *See Cohen*, 184 F.3d at 1297 (rejecting the notion that a request for damages is a "claim" within the meaning of Rule 8(a)(2)). Just as a request for punitive damages in ***Cohen*** could not be considered a "claim" under Rule 8(a)(2), the verification procedure required by the anti-SLAPP statute cannot be considered an additional component of the UDTPA claim, which itself need only

5

be pleaded in a short and plain statement.  Verification is a procedural obligation

separate and apart from the UDTPA claim itself.  Therefore, a party asserting a claim

subject to the anti-SLAPP statute can simultaneously comply with both the "short

and plain statement" requirement of Rule 8 and the verification provision of

O.C.G.A. § 9-11-11.1(b).  Because the state law and the Federal Rule "can exist side

by side . . . each controlling its own intended sphere of coverage" there is no conflict

and the *Hanna* analysis is not implicated.  *See **Walker***, 740 U.S. at 752.[4]

Plaintiffs also maintain that the provision in the anti-SLAPP statute requiring

an unverified claim to be automatically stricken directly conflicts with the policy

favoring liberal amendment of pleadings contained in Rule 15(a).  Under Rule 15(a),

"leave [to amend] shall be freely given when justice so requires."  Whether a party

is granted leave to amend his pleadings under Rule 15(a) is a matter left to the

discretion of the trial court.  By contrast, the anti-SLAPP statute contains a

mandatory provision stating that "[i]f the claim is not verified as required by

---

[4] Plaintiffs make a similarly unavailing "conflict" argument with respect to Rule 11 of the Federal Rules.  They argue that, because Rule 11 and the verification provision in the anti-SLAPP statute both require that a claim be pursued in good faith, after reasonable inquiry, and not for any improper purpose, Rule 11 occupies the same field of coverage as the verification provision.  For this reason, Plaintiffs suggest that the anti-SLAPP statute should not be applied in federal court.  However, they fail to explain how the similarities between Rule 11 and O.C.G.A. § 9-11-11.1(b) create a conflict under *Hanna* since compliance with each can be simultaneously achieved.

6

[subsection b], it *shall be stricken* unless it is verified within ten days after the omission is called to the attention of the party asserting the claim." O.C.G.A. § 9-11-11.1(b) (emphasis added).

In this case, ACGIH brought the omission to Plaintiffs' attention by pleading Plaintiffs' non-compliance with the anti-SLAPP statute as an affirmative defense in its answer, which was filed on 6 April 2005. The ten-day grace period contemplated by the statute has long since passed. Therefore, under the plain terms of the statute the failure to verify the UDTPA claim requires that it be stricken. This outcome, however, creates a direct conflict with Rule 15(a). *See **Verizon Delaware, Inc. v. Covad Comm. Co.**,* 377 F.3d 1081, 1091 (9th Cir. 2004) ("granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment."). Rule 15(a) is sufficiently broad to control this issue because the Court is unable to give effect to both the Federal Rule and the state rule. The conflict is unavoidable because leave to amend under Rule 15(a) is discretionary while the automatic-strike provision of O.C.G.A. § 9-11-11.1(b) is mandatory. *See* 17A *Moore's Federal Practice*, § 124.03[1] (Matthew Bender 3d ed. 2004) (commenting that "federal courts have held that discretionary federal rules are sufficiently broad

to conflict with similar mandatory state rules."); *see, e.g., **Burlington N. R.R. v. Woods***, 480 U.S. 1, 7 (1987) (reasoning that the federal rule's "discretionary mode of operation unmistakably conflicts with the mandatory provision of Alabama's [state law]."); *see also **Harvey's Wagon Wheel, Inc. v. Van Blitter***, 959 F.2d 153, 155 (9th Cir. 1992) (same reasoning, different rules).  If the anti-SLAPP statute's madatory strike provision were applied in federal court, it would undoubtably "impair the operation and effect of" Rule 15(a).  *See **Cohen***, 184 F.3d at 1298.

Because a conflict exists between Rule 15(a) and the mandatory strike provision contained in the anti-SLAPP statute, the Supreme Court's ***Hanna*** analysis is triggered, and the Court must apply the federal rule unless it is unconstitutional or invalid under the Rules Enabling Act.  *See **Hanna***, 380 U.S. at 471.  Federal Rules of Procedure are presumed to be both constitutionally and statutorily valid.  *See **Burlington***, 480 U.S. at 5.  The Court finds nothing that would undermine these presumptions.

Applying Rule 15(a), the Court finds that it is in the interest of justice to permit Plaintiffs to amend their First Amended Complaint, with respect to the UDTPA claim, to bring it into compliance with the verification requirements set forth in O.C.G.A. § 9-11-11.1(b).  Plaintiffs are directed to verify their UDTPA claim

forthwith.  ACGIH's Motion to Strike (tab 92) is hereby **DENIED.**[5]

## II.   Discovery Format and Scope

There is much disagreement about the way in which discovery in this case

should proceed.  The parties have submitted to the Court three separate proposed

scheduling orders, each of which varies widely in terms of the suggested format and

scope of discovery.  A brief summary of the parties' proposals is as follows:

### A.   Plaintiffs

Plaintiffs are in favor of a traditional, six-month discovery period, with

expiration set for 2 September 2005.  They want to depose approximately fifteen

individuals, including: ACGIH Board Members; ACGIH TLV committee members;

and various DOL officials.  They propose that all motions to amend be filed by 15

---

[5] The Court notes that Plaintiffs have also challenged ACGIH's Motion to Strike on the grounds that the anti-SLAPP statute, by its own terms, does not apply to ACGIH's act of disseminating TLVs.  The Court disagrees.  ACGIH's promulgation and publication of TLVs can "reasonably be construed as an act in furtherance of the right of free speech . . . in connection with an issue of public interest or concern."  O.C.G.A. § 9-11-11.1(b).  The statute is to be broadly construed, and while subsection (c) of the statute lists among the examples of "act[s] in furtherance of the right of free speech" any "written or oral statement . . . made before or to a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," that list is not exclusive.  *See Chatham Orthopaedic Surgery Ctr., LLC v. Ga. Alliance of Comm. Hosp., Inc.,* 585 S.E. 2d 700, 702 (Ga. Ct. App. 2003).

June 2005, and that all dispositive motions be filed no later than 15 October 2005[6] (45 days after the close of discovery).

**B.    ACGIH**

ACGIH proposes a bifurcated discovery process, with each phase lasting three months. The only claim remaining against ACGIH is claim brought by Plaintiffs under Georgia's Uniform Deceptive Trade Practices Act ("UDTPA"), O.C.G.A. § 10-1-372 (Lexis 2000).  ACGIH suggests that the initial phase of discovery be limited solely to the following issues: (1) whether ACGIH's conduct in publishing and disseminating the TLVs is privileged; and (2) whether ACGIH acted with actual malice toward Plaintiffs in publishing and disseminating its TLVs.  ACGIH proposes that this phase be completed by 8 July 2005.  At the end of the first phase, ACGIH expects that it would file a motion for summary judgment on these issues (no later than 1 August 2005), which, if granted, would terminate them as a party in the case. If summary judgment were denied, the parties would then proceed to phase two of discovery, a second three-month period devoted to the rest of the issues pertinent

---

[6] Plaintiffs have stated the dispositive motion deadline as 15 September in their proposed scheduling order; apparently, this is an unintentional oversight, as discovery under the terms of their proposal would have only been closed for roughly a week.  The Court assumes that Plaintiffs meant to state a dispositive-motion filing deadline of 15 October.

to Plaintiffs' UDTPA claim.  ACGIH anticipates that, 45 days after the completion of phase two, it would file a second motion for summary judgment with respect to any remaining issues.

The legal basis for ACGIH's contention is one sentence from the decision of the Georgia Court of Appeals in *Dominy v. Shumpert*, 510 S.E.2d 81, 86 (1998), which states that: "The presence of privilege combined with the absence of malice also eliminates any claim plaintiff alleged under O.C.G.A. 10-1-372(8)."  The court in *Dominy*, however, dealt primarily with Georgia's libel statute, and reliance on this sentence as a basis for substantially modifying the traditional discovery model appears to this Court to be unwarranted.  Further, the *Dominy* decision referred only to section (8) of O.C.G.A. § 10-1-372, but Plaintiffs have alleged violations of sections (7) and (12) as well.

### C.    DOL

DOL makes two arguments regarding discovery on Plaintiffs' APA claim. First, it argues that Plaintiffs are entitled to *no* discovery because APA claims must be resolved on the administrative record alone, not by trial *de novo*.  Second, DOL proposes that, if discovery is permitted, it be limited solely to the issue of whether ACGIH is "utlized by" DOL for FACA purposes.  Because the Court has already

determined that the allegations in Plaintiffs' amended complaint do not state a claim under the "created by" prong of FACA, it follows that if ACGIH is not "utilized by" DOL then ACGIH is not covered by FACA and the APA claim against the DOL must fail.

As the Supreme Court has noted, "'[T]he focal point for judicial review [of agency action] should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). This general rule makes sense given that in a typical APA challenge "[t]he entire case on review is a question of law, and only a question of law." *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). When a reviewing court is faced with evaluating the legality of a particular agency action, and therefore has before it a pure question of law, there is rarely a reason or justification for developing a new factual record.

However, because Plaintiffs' APA claim against DOL is based on ACGIH's failure to comply with FACA, it is somewhat different from the usual APA claim. The answer to the legal issue presented by Plaintiffs' APA claim—whether DOL acts contrary to law when it relies on ACGIH's TLVs—turns on the relationship between

DOL and ACGIH.  If ACGIH is "utilized by" DOL as that phrase is used in FACA, and therefore functions as a federal advisory committee, then DOL is in violation of the law since it is undisputed that ACGIH does not comply with FACA's requirements.  If, on the other hand, ACGIH is not "utilized by" DOL, it cannot be considered a federal advisory committee, it need not comply with FACA, and DOL's reliance on ACGIH's TLVs is not legally improper.

An evaluation of the sort required here cannot be made without the development of a factual record specifically focusing on the nature of this relationship; that is, a record from which the Court can ascertain whether ACGIH is "utilized by" DOL for FACA purposes.  DOL's argument that, because this claim is brought under the APA, Plaintiffs are entitled to no discovery must be rejected because it does not take into account the particular features of Plaintiffs' claim which distinguish it from those APA claims that are properly reviewable on the administrative record alone.  The Court determines that the current relationship between DOL and ACGIH cannot be discerned from looking solely at the administrative record.  Consequently, the Court will permit Plaintiffs to engage in discovery with respect to its claim against DOL, but stresses that such discovery must be limited as discussed above.

13

III.   <u>**Plaintiff's Motion to Exceed Limits on the Number of Written Interrogatories, Requests for Admissions, and Requests for Production**</u>

This matter was partially resolved during a phone conference held by the Court on May 16, 2005.  During the conference call, ACGIH agreed to Plaintiffs' request for 40 written interrogatories, 50 requests for admissions, and 50 requests for production.  DOL objected to a similar request with respect to Plaintiffs' APA claim, arguing that Plaintiffs' request is premature since no attempt has been made to conduct discovery within the limits prescribed by the Federal and Local Rules of Procedure (25/15/10—respectively).

DOL maintains that Plaintiffs should be required first to proceed under the prescribed limits and then, only if those limits prove infeasible, be permitted to seek additional discovery by leave of court upon a "particularized showing" of necessity. As discussed above, the Court anticipates that the scope of discovery with respect to Plaintiffs' APA claim will be rather narrower than the scope of discovery with respect to the UDTPA claim against ACGIH.  Discovery on the APA claim will center on one issue: whether ACGIH is a federal advisory committee under FACA; more specifically, whether ACGIH is "utilized by" DOL.

14

For this reason, the Court agrees with DOL's proposal that, before seeking permission from the Court for an extension, Plaintiffs should make every diligent effort to conduct their discovery within the limits prescribed by this Court's Local Rules: 25 written interrogatories (L.R. 33.1); 15 requests for admissions (L.R. 36); and 10 requests for production (L.R. 34).   Should Plaintiffs find that these limits unreasonably hamper their ability to discover information relevant to their claim against DOL, they are directed to file a motion with the Court specifying the grounds for a reasonable extension.

## IV.   CONCLUSION

Having now resolved all the discovery-related issues currently pending, the Court summarizes its findings and directs the parties as follows:

1.   ACGIH's Motion to Strike (tab 92) is hereby **DENIED.**  Plaintiffs are **ORDERED** to file within 10 days an amended complaint containing a properly verified UDTPA claim complying with O.C.G.A. § 9-11-11.1 and O.C.G.A. § 9-10-113;

2.   Plaintiffs shall be permitted to conduct discovery on their APA claim against DOL, but are directed to limit such discovery solely to the issue of whether ACGIH is "utilized by" DOL for FACA purposes;

3.   The discovery process shall not be bifurcated;

4.   Plaintiffs' Motion for Discovery (tab 90) is hereby **GRANTED** in part and **DENIED** in part:

a.   With respect to ACGIH, Plaintiffs shall be entitled to propound up to 40 written interrogatories, 50 requests for admissions, and 50 requests for production;

b.   With respect to DOL, Plaintiffs shall abide by the limits contained in this Court's Local Rules.

Furthermore, counsel are hereby **ORDERED** to confer with each other for the purpose of devising a jointly proposed scheduling order for submission to the Court. Such proposal shall be filed with the Court within 20 days.

SO ORDERED, this 20th day of May, 2005.

/s/ **Duross Fitzpatrick**
DUROSS FITZPATRICK, JUDGE
UNITED STATES DISTRICT COURT

DF/sew

16

# A M E N D M E N T

Not surprisingly, albeit somewhat sooner than expected, this matter is once again before the Court; this time on a motion for certification (tab 101) filed by Defendant American Conference of Governmental Industrial Hygienists, Inc. ("ACGIH") seeking interlocutory appellate review under 28 U.S.C.A. § 1292(b).  For the following reasons, ACGIH's motion for certification is **GRANTED.**

On May 20, 2005, the Court entered the above Order denying a motion to strike filed by ACGIH under Georgia's anti-SLAPP statute, O.C.G.A. § 9-11-11.1 (Lexis Supp. 2004).  ACGIH sought to have Plaintiffs' Uniform Deceptive Trade Practice Act ("UDTPA") claim dismissed for failure to comply with the anti-SLAPP statute's verification requirements.  Denial of ACGIH's motion was compelled by the Court's conclusion that applying the mandatory-strike provision of the anti-SLAPP statute would result in a direct conflict with Rule 15(a) of the Federal Rules of Civil Procedure.  Because this suit is being litigated in federal court, the Court gave effect to the Federal Rule, permitted Plaintiffs to file an amended complaint in compliance with the anti-SLAPP statute, and rejected ACGIH's argument that the state statute governed this issue.

17

On May 27, 2005, ACGIH moved the Court, in accordance with Rule 5(a)(3) of the Federal Rules of Appellate Procedure, to amend its May 20 Order by certifying that the anti-SLAPP ruling is fit for immediate appellate review under 28 U.S.C.A. § 1292(b) (West 1993).  Having reviewed ACGIH's motion for certification, and Plaintiffs' response thereto, the Court concludes that its May 20 Order meets the statutory criteria for interlocutory review.  As explained below, that Order involves a controlling issue of law as to which there is substantial ground for difference of opinion; furthermore, an immediate appeal may materially advance the ultimate termination of the litigation.  *See* 28 U.S.C.A. § 1292(b).[7]

## I.    Controlling Question of Law

The question of law addressed in the Court's May 20 Order is unsettled in the Eleventh Circuit: Whether the mandatory-strike provision of Georgia's anti-SLAPP statute may be applied in federal court in light of its tension with Rule 15(a) of the Federal Rules of Civil Procedure.  It is also controlling for § 1292(b) purposes.

---

[7] "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order. . . ."  28 U.S.C.A. § 1292(b) (West 1993).

A question of law "may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if it is not certain to do so." *Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996). There is a likelihood that the resolution of this Court's anti-SLAPP ruling will affect the further course of the litigation. Whether that likelihood will come to pass depends in part on the answer to an unresolved question of state law: namely, how is a dismissal under the mandatory-strike provision of the statute to be treated—*with* prejudice or *without* prejudice?

It is the Court's view that such a dismissal is with prejudice. *See Hawks v. Hinely*, 556 S.E.2d 547, 552 (Ga. Ct. App. 2001). Unfortunately, the law in Georgia is inconclusive. The statute itself is silent, the Georgia Court of Appeals has taken inconsistent positions,[8] and the Georgia Supreme Court has not addressed the issue. Though the court of appeals' with-prejudice conclusion in *Hawks* has been

---

[8] The court of appeals has recognized its inconsistencies: "[T]his Court has issued contradictory opinions as to whether such a dismissal [under O.C.G.A. § 9-11-11.1] is with or without prejudice. . . . While such issue is not before us at this time, this conflict in the cases needs to be addressed either by this Court, when properly before it, or by the legislature." *Walden v. Shelton*, 606 S.E.2d 299, 302 n.2 (Ga. Ct. App. 2004); *see, e.g.*, *Browns Mill Dev. Co. v. Denton*, 543 S.E.2d 65 (Ga. Ct. App. 2000); *Metzler v. Roswell*, 547 S.E.2d 311 (Ga. Ct. App. 2001); *Hawks v. Hinely*, 556 S.E.2d 547 (Ga. Ct. App. 2001); *Chatham Orthopaedic Surgery Center v. Ga. Alliance of Community Hosps.*, 585 S.E.2d 700 (2003); *Land v. Boone*, 594 S.E.2d 741 (2004).

recognized as dicta by a subsequent decision of that same court, *see Walden*, 606 S.E.2d at 302 n.2, this Court nevertheless predicts that the Georgia Supreme Court would so hold if it were presented with this question.[9]  To hold otherwise—that a dismissal under the statute is without prejudice—would render the 10-day, corrective grace period meaningless.  The mandatory-strike provision is intended to operate as a sanction against those who file unverified or improperly verified claims and who fail to cure their noncompliance within 10 days after they are put on notice of the deficiency.  Were a noncompliant claim to be struck without prejudice, thus allowing a corrected version to be subsequently refiled, the incentive to comply with the 10-day grace period would evaporate, effectively writing that provision out of the statute.

Given this determination, should the Eleventh Circuit reverse this Court—and hold that the mandatory-strike provision does apply in federal court—the course of the litigation would be significantly affected.  Such a result would reshape the

---

[9] "In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve this issue if presented with the same case."  *In re Whitaker Const.* **Co.**, No. 04-30344, 2005 WL 1253869, at *2 (5th Cir. May 27, 2005); *see also Lehman Bros. v. Schein*, 416 U.S. 386, 390-91 (1974); *Freeman v. First Union Nat'l*, 329 F.3d 1231, 1232-33 (11th Cir. 2003); *Escareno v. Noltina Crucible and Refractory Corp.*, 139 F.3d 1456, 1460-61 (11th Cir. 1998).  Should the Eleventh Circuit decide to hear this interlocutory appeal, it may of course wish to exercise its discretion in favor of certifying this question to the Georgia Supreme Court.  *See* O.C.G.A. § 15-2-9(a) (Lexis 2005).  Though this Court has chosen to forecast the Georgia Supreme Court's position on this issue, the unsettled state of the law makes it appear to be a strong candidate for certification.

litigation because dismissing Plaintiffs' UDTPA claim with prejudice would terminate ACGIH as a party, leaving DOL as the only remaining defendant.

## II.    Substantial Grounds for Difference of Opinion

As noted in the May 20 Order, the district courts in this Circuit that have addressed the anti-SLAPP statute's application in federal court are not in accord. And the Eleventh Circuit has never had occasion to decide the issue.  Because district court opinions can be cited in support of either proposition, it appears that this unsettled, intra-circuit split provides litigants with a substantial ground for difference of opinion.

## III.    May Materially Advance Termination of the Litigation

Should the Eleventh Circuit determine that the anti-SLAPP statute applies, and should a dismissal under the statute be deemed with prejudice, the question of law involved in this Court's May 20 Order will materially advance the termination of this litigation.  Count III of Plaintiffs' amended complaint would be severed from the lawsuit and, as a result, so would ACGIH.

Plaintiffs argue that ACGIH's dismissal as a party would not materially advance the termination of the litigation because the case would still proceed against DOL and because ACGIH would still be obliged to participate in discovery.

21

But § 1292(b) does not require that the resolution of a controlling legal question bring the entire lawsuit to an end.  That may be the result on occasion, but the statute is broader.  Its purpose is to save parties from expending unnecessary time, effort, and money litigating a controlling question of law erroneously decided by the district court.  While this Court stands firmly behind its decision not to apply the anti-SLAPP statute, if that conclusion is unsound it should be corrected.  And if such a correction requires that ACGIH be terminated as a party, then so it should be—even if ACGIH will necessarily remain involved in the discovery process.

## IV.    Conclusion

Though there is a strong policy against piecemeal appeals in the federal courts, Congress has enacted a statute equipped to handle those exceptional situations in which interlocutory review is warranted.  In the Court's view, this case presents such a situation.  Therefore, the court hereby certifies that its May 20 Order denying ACGIH's motion to strike fulfills § 1292(b)'s criteria for interlocutory appeal.  Accordingly, ACGIH's motion for certification is **GRANTED.**

SO ORDERED, this 12th day of July, 2005.

**/s/ Duross Fitzpatrick**
DUROSS FITZPATRICK, JUDGE
UNITED STATES DISTRICT COURT

DF/sew