**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| INTERNATIONAL BROMINATED SOLVENTS ASSOCIATION; AEROSAFE PRODUCTS, INC.; NATIONAL MINING ASSOCIATION; and ANCHOR GLASS CONTAINER CORPORATION, INC., | : : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | 5:04-cv-394 (HL) |
| AMERICAN CONFERENCE OF GOVERNMENTAL INDUSTRIAL HYGIENISTS, INC.; ELAINE CHAO, Secretary, U.S. DEPARTMENT OF LABOR; TOMMY THOMPSON, Secretary, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, | : : : : : : : : : | |
| Defendants. | : | |

**O R D E R**

Before the Court is Defendant American Conference of Governmental Industrial Hygienists, Inc.'s ("ACGIH") Motion to Compel the Return of Inadvertently Produced Documents (doc. 158). Defendant ACGIH alleges that over the course of discovery, it inadvertently produced documents that were protected by the attorney-client privilege. In support of its motion to compel, Defendant ACGIH submitted eighteen exhibits for in camera review (doc. 167). During the telephone conference held before District Judge Duross Fitzpatrick on September 6, 2006, Defendant ACGIH represented to the Court that the above-mentioned exhibits, submitted a day earlier, were actually a representative sample of documents it had inadvertently produced, rather than the entirety of the documents whose return it sought. The parties agreed that the Court's ruling addressing the eighteen

exhibits would apply to all of the inadvertently produced documents.

## I.     BACKGROUND

The Court summarized the pertinent facts of this case in a previous order dated March 11, 2005 (doc. 70).  In that order, the Court granted and denied in part a number of motions to dismiss, effectively narrowing the complaint and paring down the issues to be tried.  Originally, Plaintiffs' First Amended Complaint contained five counts against Defendants.  Count I asserted a claim against all Defendants for violations of the Federal Advisory Committee Act ("FACA"), 5 U.S.C. App. § 1-16; Count II asserted a FACA-based claim against all defendants under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 704; Count III asserted a claim against ACGIH for violations of Georgia's Uniform Deceptive Trade Practices Act ("UDTPA"), O.C.G.A. § 10-1-372; Count IV asserted a claim against ACGIH for tortious interference with contractual and business relations; and Count V asserted claims against the Department of Labor ("DOL") for violations of the APA, the Federal Register Act, 44 U.S.C. §§ 1501-11, the Paperwork Reduction Act, 44 U.S.C. §§ 3501-21, and the Due Process Clause of the Fifth Amendment to the United States Constitution. In the March 11 order, the Court dismissed Counts I, IV, and V in their entirety and dismissed Count II against ACGIH, thus leaving only two of Plaintiffs' claims for discovery: the APA claim against DOL, the federal defendants, contained in Count II, and the UDTPA claim against ACGIH contained in Count III.

The present motion addresses the inadvertent production of documents that Defendant ACGIH alleges are protected by the attorney-client privilege.  It seeks an order from the Court compelling Plaintiffs to return what Defendant ACGIH considers privileged materials, and prohibiting Plaintiffs from using such materials in the prosecution of their claim.  This particular

2

discovery dispute, one of a multitude that has existed throughout this case, originated from a May 31, 2006 deposition. While deposing Defendant ACGIH's Executive Director, A. Anthony Rizzuto, Plaintiffs' counsel attempted to question the deponent about a memorandum dated September 28, 2001, written by Steven Fellman, who was Defendant ACGIH's General Counsel at the time.

The memorandum ("Memo") is a six-page document entitled, "The TLVs, Procedures and Process–Realities and Perceptions," and is addressed to the Defendant ACGIH's Board of Directors. It describes the history and function of ACGIH, the process by which it crafts threshold limit values ("TLVs"), and provides instructions for how to manage controversy in the future. In the last section of the Memo, entitled "Considerations for Future Action," Fellman counsels the Board of Directors on how the organization should conduct its affairs in the future, focusing on the instances where they are dealing with controversial substances.

In response to inquiries dealing with the Memo directed towards Mr. Rizzuto, defense counsel objected to Plaintiffs' use of said Memo. Only then did counsel for Defendant ACGIH realize that opposing counsel was in possession of what Defendant ACGIH considered to be various documents protected by the attorney-client privilege, including but not limited to, the Memo that had been inadvertently produced. Counsel for Defendant ACGIH responded by writing a letter to Plaintiffs' counsel, requesting the voluntary return of the documents. Plaintiffs' counsel refused to return any of the requested documents, denying that they were in fact privileged and, in the alternative, asserting that any privilege had been waived.[1]

---

[1] Although not applicable to this case due to timing, it is worth noting that the recent amendments to the Federal Rules of Civil Procedure have addressed this issue specifically:
> If information is produced in discovery that is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being

## II. DISCUSSION

The present dispute stems from the revelation that Plaintiffs' counsel was in possession of, and planning to utilize in support of its position, the Memo written by Fellman, former General Counsel of ACGIH. Somehow, immediately after this revelation, Defendant ACGIH realized that Plaintiffs' counsel was in possession of a number of other allegedly inadvertently produced documents. Considering the number of documents alleged to have been inadvertently produced, Defendant ACGIH have produced under seal a sample of eighteen exhibits that represent the sort of documents whose return is sought.

Although the Court is armed with a representative sample of allegedly inadvertently produced documents, the parties have agreed that the outcome of the motion will apply to all the documents whose return is sought. Since the Memo was the catalyst for this motion to compel, the Court's analysis will begin there. The relief sought by Defendant ACGIH relies on a determination that the Memo was protected by the attorney-client privilege, and that the inadvertent production of the Memo did not constitute a waiver of said privilege.[2]

---

      notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The producing party must preserve the information until the claim is resolved.

Fed. R. Civ. P. 26(b)(5)(B).

[2]Defendant ACGIH inserts a work-product argument in its reply brief to supplement its argument that the Court should compel the return of certain documents inadvertently produced. As Defendant ACGIH proffers its work-product argument as a last ditch effort, the Court will refrain from addressing the issue directly. Considering that the mental impressions of Attorney Fellman have already been disclosed through inadvertent disclosure, the work-product doctrine and its protections have been extinguished.

4

### A. Attorney-client Privilege

The venerable attorney-client privilege is a common law rule that promotes confidential communications. "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). "The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Id. However, "the privilege is not a favored evidentiary concept in the law since it serves to obscure the truth, and it should be construed as narrowly as is consistent with its purpose." United States v. Suarez, 820 F.2d 1158, 1160 (11th Cir. 1987) ("[W]here there has been a disclosure of a privileged communication, there is no justification for retaining the privilege.").

The Federal Rules of Evidence provide the starting point for a discussion about privileges in federal court cases:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501. As the attorney-client privilege is a common law protection, state courts are free to fashion their own jurisprudence. As a result, a choice of law issue is presented in this case because of the mix of state and federal claims facing Defendants. Defendant ACGIH argues that state privilege law should apply, while Plaintiffs counter that federal common law governs.

Defendant ACGIH reads Rule 501 literally to suggest that the attorney-client privilege issue should be governed by Georgia law because the only claim currently pending against ACGIH is a state law deceptive trade practices claim. However, the Court agrees with Plaintiffs; federal common law should govern the privilege issue. The Court of Appeals for the Eleventh Circuit addressed a similar choice of law issue in the privilege arena and held that "the federal law of privilege governs even where the evidence sought might be relevant to a pendent state claim." Hancock v. Hobbs, 967 F.2d 462, 467 (11th Cir. 1992). "[T]he federal law of privilege provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question, even if the witness-testimony is relevant to a pendent state law count which may be controlled by a contrary state law of privilege." Id.; see also 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 501.02[2][c] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2006) (recognizing preference for federal privilege law in cases with federal and state law claims).

The attorney-client privilege is premised on two basic points: first, that there was an attorney/client relationship, and second, that confidential communications were made. The Eleventh Circuit elaborated on this premise and articulated an extensive set of elements that must be proven to claim the attorney-client privilege at the federal level:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

In re Grand Jury Proceedings 88-9, 899 F.2d 1039, 1042 (11th Cir. 1990). Plaintiffs' objection to

Defendant ACGIH's assertion of the privilege regarding the Memo is that (1) the attorney author is actually a fact witness rather than a lawyer, and that (2) the memo consists of nothing more than facts as opposed to legal opinions.

The Court disagrees, and instead is convinced that Fellman was acting as a lawyer when drafting the Memo. Fellman, author of the Memo, was General Counsel for Defendant ACGIH at the time it was drafted in satisfaction of the second prong of Grand Jury Proceedings 88-9. As a result, the Court recognizes that an attorney/client relationship was established. For the privilege to then attach, the Memo must be deemed a confidential communication.

The Court is satisfied that the Memo qualifies as legal opinion on how to proceed in the future to best avoid controversy and liability. The Memo reflects confidential communications between an Attorney Fellman and Defendant ACGIH's Board of Directors, for the purposes of providing Fellman's opinions in his capacity as General Counsel. While it appears as though the attorney-client privilege elements have been satisfied, the Court need not make this determination to dispose of the motion. Instead, the Court will address the issue of waiver, as Plaintiffs have also alleged that the existence of the privilege was vitiated due to Defendant ACGIH's counsel's carelessness.

**B. Waiver**

An example of conduct that can extinguish an element of the privilege is the reckless, albeit inadvertent, disclosure of privileged documents. Courts have used three standards in determining whether inadvertent disclosure of privileged documents constitutes a waiver: a strict approach, a lenient approach, and the balancing test. The strict approach holds that any disclosure, even an inadvertent one, constitutes a waiver. See, e.g., In re Sealed Case, 877 F.2d 976, 980 (D.C. Cir.

1989) ("Although the attorney-client privilege is of ancient lineage and continuing importance, the confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived. The courts will grant no greater protection to those who assert the privilege than their own precautions warrant."). The lenient approach requires a deliberate act or intentional disclosure before a privilege is waived. See, e.g., Mendenhall v. Barber-Greene Co., 531 F. Supp. 951, 955 (N.D. Ill. 1982) ("We are taught from first year law school that waiver imports the 'intentional relinquishment or abandonment of a known right.' Inadvertent production is the antithesis of that concept."). The balancing test requires a case-by-case analysis. See, e.g., Briggs & Stratton Corp. v. Concrete Sales & Servs., 176 F.R.D. 695, 699 (M.D. Ga. 1997). In Briggs & Stratton, District Judge Wilbur Owens weighed all three standards and settled on the case-by-case approach, which requires the Court to weigh the following:

> (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosures; and (5) whether the overriding interests of justice would be served by relieving a party of its error.

Id. While this Court is not bound by its earlier decisions, the undersigned is convinced that this ad hoc approach is the most appropriate of the three analyses.

       **1. Reasonableness of precaution**

Defendant ACGIH uses its document production methods as both shield and sword. First, it describes itself as a small operation comprised mostly of volunteers that was overburdened by such a large document production. Its lack of resources, it argues, should excuse an accidental disclosure of a privileged document. However, Defendant ACGIH also contends that its counsel, Greenberg Traurig, was a large law firm, and through the declaration of one its attorneys, argues that every

8

possible precaution was taken to ensure that no privileged documents were disclosed.

Based on the nature of the document production in this case, the Court finds that Defendant ACGIH did not take reasonable precautions to prevent inadvertent disclosure. After the first document production undertaken during discovery, Defendant ACGIH produced five copies of the Memo amongst a total of 13,000 pages of documents. This production contained no labels, no numbering system, and no privilege log. The steps taken to protect the confidentiality of documents produced in this case deemed to be privileged were unreasonable, and such carelessness weighs in favor of waiver of the attorney-client privilege.

### 2. Number of disclosures

With only a representative sample before the Court, it is unclear just how many privileged documents were inadvertently produced. Defendant ACGIH claims the number to be in the hundreds, and with a total production of approximately 97,000 pages, the percentage is not shockingly high. As a factor in the balancing test, the low number of disclosures as compared to the total number of documents produced weighs against a finding that Defendant ACGIH waived its privilege protections.

### 3. Extent of the disclosure

Just the Memo alone, not counting the other documents whose return Defendant ACGIH seeks, was produced a total of seven times. During the first document production, five separate copies of the memo were produced. Defendant ACGIH did not appear concerned about protecting the contents of a document that it was so willing to produce. The undersigned cannot help but interpret the gratuitous production of the Memo as further evidence of reckless, albeit inadvertent, disclosure. The Court finds that the extent of the disclosure weighs in favor of a determination that

9

Defendant ACGIH waived their attorney-client privilege.

**4. Delay and measures taken to rectify disclosures**

Approximately 292 days elapsed between the time Defendant ACGIH first produced the Memo and when it asserted the privilege and requested its return. While that delay is certainly considerable, Defendant ACGIH moved decidedly quicker once it realized that Plaintiffs' counsel was in possession of the Memo. A week after the deposition of Anthony Rizzuto, counsel for Defendant ACGIH contacted opposing counsel and requested the return of any inadvertently disclosed documents that were privileged. However, regardless of how swift this response was, the measures taken to rectify the mistake were half-hearted. After learning of their error, counsel for Defendant ACGIH sent a one paragraph letter requesting the return of the Memo and other documents. The letter was not specific at all and gave no indication how many documents Defendant ACGIH wanted returned or which ones they were. Again, this lackluster effort of protecting privileged documents weighs in favor of waiver.

**5. Interests of justice served by relieving Defendant ACGIH of error**

The catch-all provision of the balancing test does not apply to Defendant ACGIH. Defendant ACGIH downplays Plaintiffs' characterization of the memo as a "smoking gun," yet it fights quite hard to prevent it from being used in this case. While the practice of Plaintiffs' counsel in disseminating the Memo is questionable, the reality is that the Memo is no longer a confidential document. Preventing its use in the above-captioned litigation will not protect its contents, and therefore, the Court sees no reason why it should not treat the privilege asserted over the Memo as having been waived.

## III. CONCLUSION

Because the balancing test is virtually identical for all of the documents in the representative sample, the Court will treat them all the same for purposes of waiver of the privilege. Accordingly, Defendant ACGIH's Motion to Compel the Return of Inadvertently Produced Documents (doc. 158) is hereby DENIED.

SO ORDERED, this 29th day of June, 2007.

/s/ *Hugh Lawson*
HUGH LAWSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

HL/cbb