:IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

INTERNATIONAL BROMINATED :
SOLVENTS ASSOCIATION, et al., :
 :
    Plaintiffs, :
 : 5:04-cv-394 (HL)
v. :
 :
AMERICAN CONFERENCE OF :
GOVERNMENTAL INDUSTRIAL :
HY7GIENISTS, INC., et al., :
 :
    Defendants.

**ORDER**

**I. INTRODUCTION**

The contentious discovery process in this case has resulted in a number of motions to compel filed by Plaintiffs. These motions were accompanied by requests for sanctions against Defendants in the form of attorney's fees and costs. In their Motion to File Supplemental Briefing (Doc. 237), Plaintiffs for the first time ask for sanctions in the form of deeming designated facts as admitted. In support of this argument, they claim that Defendants have intentionally obstructed discovery by withholding, failing to preserve, or destroying documents subject to discovery.

The Court explicitly withheld ruling on the sanctions requests in Plaintiffs' August 22, 2005 Motion to Compel (Doc. 111) and November 9, 2005 Motion to

Compel (Doc. 119). In addition, the Orders addressing Plaintiffs' June 8, 2006 Motion to Compel, (Doc. 149), and February 14, 2007 Motion to Compel (Doc. 176) did not directly address the request for sanctions. For the reasons set out below, however, the requests are denied.

## II. ANALYSIS

### A. Standard

Plaintiffs seek sanctions under Rule 37, which states in relevant part:

> (A) *If the Motion [to Compel Discovery] Is Granted* (or Disclosure or Discovery Is Provided After Filing). If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
> . . .
>   (ii) the opposing party's nondisclosure, response, or
>   objection was substantially justified; or
>   (iii) other circumstances make an award of expenses
>   unjust.
> (B) *If the Motion Is Denied*. If the motion is denied, the court may . . . after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.
> (C) *If the Motion Is Granted in Part and Denied in Part*. If the motion is granted in part and denied in part, the court may . . . after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

Fed. R. Civ. P. 37(a). Plaintiffs also argue that the circumstances here justify use of the Court's inherent power to sanction a party for disrupting litigation in bad faith. See Maulautea v. Suzuki Motor Co., Ltd., 987 F.2d 1545-46 (11th Cir. 1993). In none of the motions at issue did the Court grant Plaintiffs' motion in its entirety. The decision to issue sanctions is therefore left to the Court's discretion. See Fed. R. Civ. P. 37(a).

### B. August 22, 2005 Motion to Compel (Doc. 111)

Plaintiffs' Motion to Compel sought compliance with a number of their interrogatories and requests for production and admissions to which the American Conference of Governmental Industrial Hygienists, Inc. ("ACGIH") had objected. The Court granted some of Plaintiffs' requests and denied others. Although the Court may impose sanctions in this situation, it now finds that doing so would be inappropriate.

According to Plaintiffs, ACGIH acted in a less cooperative manner than it did in a similar lawsuit, the "trona case." This fact alone, however, is insufficient to justify the imposition of sanctions and is at best only marginally probative on the issue of sanctions. Whether ACGIH produced documents relevant to the issue in this case is not answered by looking to what documents it produced in another separate case addressing different issues. In addition, the requested documents may no longer exist for innocent reasons, for example, they may have been

disposed of as part of administrative procedure. Furthermore, ACGIH's compliance with an unreasonable request in one case does not permanently bind it to the same level of compliance in every case. The more probative question for determining whether sanctions are appropriate is whether ACGIH's objections to discovery requests were reasonable.

One of ACGIH's major objections to the scope of requested discovery was that Plaintiff sought information related to eighteen TLVs, although only four were the subject of the litigation. The Court ordered production on only ten TLVs in its Order, indicating its agreement that production for eighteen TLVs was unduly burdensome.

ACGIH also refused to produce discovery in instances where it contended that the time period covered by the requests was too broad. The Court ordered production of documents from January 1, 1995, to the present, which in some cases affirmed the period of time for which Plaintiffs had initially sought documents and in some cases shortened that time period.[1]

The outcome of these disputes indicates that the objections on the whole were validly made and not simply an attempt to evade discovery. The Motion for Sanctions contained in Plaintiffs' August 22, 2005 Motion to Compel is therefore denied.

---

[1] In response to concerns over privileged documents, the Parties were ordered to meet and make a good faith attempt to work out the disagreements.

**B. September 9, 2005 Motion to Compel (Doc. 119)**

Plaintiffs also sought a Motion to Compel discovery from the Federal Defendants. The Court sustained in large part many of the Federal Defendants' objections. For example, the Federal Defendants argued that they were only required to produce discovery related to the issue of whether DOL had "actual management and control" over ACGIH. Plaintiffs, in contrast, contended that the issue was whether ACGIH was "utilized by" the DOL. These differing characterizations of the issue caused a dispute regarding which documents were discoverable. The Court sided with DOL and required it to produce "information relevant to whether DOL 'actually manages and controls' ACGIH." Nov. 8, 2005 Order ¶ 5. It also sustained DOL's objections to producing documents or answering written discovery "about the use by DOL of TLVs and other research by ACGIH in conjunction with the standard setting, enforcement, and policy setting activities of DOL." Id. ¶ 5.

The resolution of several disputes was not clearly in favor of either party. For example, the Federal Defendants objected to requests for documents that were not in the custody or control of or produced by its employees. The Court sustained its objection to the extent that it ordered production of documents from "current DOL employees." Id. ¶ 7. DOL therefore had to produce documents in their control, which could have potentially included documents originally produced by non-DOL employees. In addition, DOL maintained that it only had to produce documents

5

dating back to 2001, even in cases where Plaintiff requested documents from 1990, 1995, or even 70 years prior. The Court ruled that discovery applied only to documents "dated from January 1, 1995 to the present." Id. at 2(a). Thus, the Court used neither the Plaintiffs' nor Federal Defendants' proposed cut-off dates.[2]

Finally, the Court did order DOL to identify and produce documents related to individuals who served on the ACGIH Board but were removed due to conflicts of interest. Although the Court did clearly resolve this issue in favor of Plaintiffs, considering the totality of Federal Defendants' objections and the Court's resolution of those issues, sanctions are inappropriate.

### C. June 8, 2006 Motion to Compel (Doc. 149)

Plaintiffs were permitted twenty depositions during discovery. In their June 8, 2006 Motion to Compel, they asked the Court to order three witnesses to submit to depositions: Dr. Paul Demers, Dr. Vickie Wells, and Dr. Dwight Culver. Although Plaintiffs had already deposed Dr. Culver, they sought a short continuation due to a number of documents that Defendants produced after the initial deposition was completed. Defendants responded by noting that the additional production included only 34 documents out of a total of over 4,000 documents produced for this deposition, that Plaintiffs refused to address these documents with a phone interview with the witness, and that Plaintiffs noticed the deposition less than a week in

---

[2]The resolution of privilege disputes with both ACGIH and DOL were resolved in the same way: the Court ordered the Parties to engage in good-faith negotiations.

advance knowing that the deposition would involve cross-country travel for several of those attending.  With respect to Dr. Wells and Dr. Demers, Defendants argued that the testimony of these witnesses was not relevant to the issues in the case and therefore not subject to discovery.

The Court's March 1, 2007 Order (Doc. 185) held that the Motion was rendered moot after a status conference.  A review of the Defendants' arguments, however, reveals that their opposition to Plaintiffs' requests for depositions was not unreasonable and does not warrant sanctions.

### D.  February 14, 2007 Motion to Compel (Doc. 176)

While the June 8, 2006 Motion to Compel was pending before the Court, Defendants apparently agreed to produce Dr. Demers for a deposition in Vancouver on September 15, 2006.  Although Defense counsel was present, weather conditions prevented Plaintiffs' counsel from reaching Vancouver.  During negotiations after the failed deposition, Defendants refused to produce Dr. Demers again unless Plaintiff paid the travel costs for defense counsel to return to Vancouver.  The February 14, 2007 Motion therefore asked the Court to order Defendants to reschedule the deposition.  The Court, however, sided with the Defendants and held that their efforts to produce Dr. Demers for deposition in September 2006 were sufficient.

The February 14, 2007 Motion to Compel also sought documents from Dr. Leslie Stayner.  The Court's June 29, 2007 Order, however, protected Dr. Stayner's documents.  Both issues in this Motion to Compel were resolved in favor of

Defendants; the Court therefore will not sanction Defendants' opposition to Plaintiffs' requests.

### E. **Withholding, Destroying, or Failing to Preserve Documents**

In all of these motions to compel, Plaintiffs sought sanctions in the form of costs and attorneys' fees. Plaintiffs now claim that Defendants failed to comply with some of the provisions of the Court's Orders by either refusing to produce relevant documents or destroying documents.

The Federal Rules provide that when a party does not obey a discovery order, the court may issue a sanction by "directing the matters embraced in the order or other designated facts be taken as establish for the purposes of the action, as the prevailing party claims." Fed. R. Civ. P. 37(b)(2)(A)(i). Any sanction imposed must be related to the claim at issue in the original order to compel. See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 707 (1982). A party may avoid sanctions for noncompliance with an order if it made "all reasonable efforts to comply with the court's order." BankAtlantic v. Blythe Eastman Paine Webber, Inc., 12 F.3d 1045, 1050 (11th Cir. 1994). District courts enjoy considerable discretion in deciding whether to sanction a party and to what degree. Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1366 (11th Cir. 1997).

Plaintiffs' Motion for Supplemental Briefing provides the presumably strongest examples of Defendants' failure to comply with discovery orders. In the first, Plaintiff attacks ACGIH for the deletion of Dr. Culver's emails and failure to preserve them

8

at the onset of litigation. As ACGIH pointed out, however, Dr. Culver is a partially retired employee of the University of California at Irvine, and the emails were deleted by the University in accordance with their administrative policy. Not only is there no evidence of intentional noncompliance by Dr. Irvine or the University of California, there is no evidence at all that the deletion was the result of acts by ACGIH.

With regard to DOL, Plaintiffs complain that it only produced a "few" documents regarding its decision to require its employees to take leave for participation in private organizations such as ACGIH. Plaintiffs provide no basis for its position that there were documents that were not produced or identified in a privilege log. Finally, Plaintiffs contend that they were not provided with documents "relating to the forced ACGIH resignation of at least one DOL employee with admitted diesel, coal dust, and other TLV conflicts of interest." Mot. Supp. Briefing at 6. The exhibit attached to Plaintiff's Motion, however, indicates that Plaintiffs did have emails regarding the forced resignation, and it is not clear what other documents they seek, or why they believe other documents relating to the resignation exist. This Court will not impose sanctions based on a party's vague assertion that more documents than those produced may exist.

Plaintiffs also cite the lack of documentation of ACGIH's decision not to redistribute the copper TLV. <u>See</u> Doc. 209, Ex. A ¶ 16. ACGIH did not specifically address this omission in its Response to Plaintiff's Motion for Supplemental Briefing. Nonetheless, considering the evidence in whole, the Court finds that Plaintiffs fail to

9

point to sufficient evidence of Defendants' failure to comply with discovery orders to provide a foundation for the imposition of sanctions. The evidence is so lacking that it did not justify supplemental briefing on the issue, see Order of March 31, 2008 (denying Motion for Leave to File), and *a fortiori* it does not require sanctions in the form of findings of fact.

## II.  CONCLUSION

Many of the discovery disputes in this case were legitimate, and once resolution without court intervention failed, filing a motion to compel was the appropriate method for resolving the problem. Defendants' opposition to Plaintiffs' discovery demands were generally reasonable. And Plaintiffs' decisions to file the motions to compel were, on the whole, justified. Furthermore, as detailed above, all Parties made both successful and unsuccessful arguments to the Court. This case is certainly not a demonstration of the ideal, cooperative discovery process envisioned by the Federal Rules. Nonetheless, the Defendants behavior does not warrant sanctions.

Aside from the substantive merits of the Parties' respective positions, other considerations are also relevant to the Court's decision. Taking the Parties' conduct during discovery as a whole, it is clear that no party has emerged blameless for the increased expense or time that the lack of cooperation caused. In its decision not to order sanctions against any Defendant, the Court is persuaded not only by the lack of a clear-cut victory for Plaintiffs in their Motions to Compel, but also by

Plaintiffs' own culpability in the protracted discovery process. At times, they took positions that distorted the facts, sought expansive discovery, and launched allegations of spoliation with little support. Rule 37 prevents the award of expenses when the circumstances would make it "unjust." In this case, where the argument in support of sanctions is weak, and the responsibility for the discovery disputes is shared, the Court declines to issue sanctions.

Plaintiffs' unresolved Motions for Sanctions (Docs. 11, 119, 149, & 176) are therefore denied.

**SO ORDERED**, this the 18th day of April, 2008.

*s/ Hugh Lawson*
**HUGH LAWSON, Judge**

tch