**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **INTERNATIONAL BROMINATED** | : | |
| **SOLVENTS ASSOCIATION; AEROSAFE** | : | |
| **PRODUCTS, INC.; NATIONAL MINING** | : | |
| **ASSOCIATION; and ANCHOR GLASS** | : | |
| **CONTAINER CORPORATION, INC.** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **5:04-cv-394 (HL)** |
| | : | |
| **AMERICAN CONFERENCE OF** | : | |
| **GOVERNMENTAL INDUSTRIAL** | : | |
| **HYGIENISTS, INC.; ELAINE CHAO,** | : | |
| **Secretary, U.S. DEPARTMENT OF** | : | |
| **LABOR; TOMMY THOMPSON,** | : | |
| **Secretary, U.S. DEPARTMENT OF** | : | |
| **HEALTH AND HUMAN SERVICES** | : | |
| | : | |
| **Defendants.** | : | |

## O R D E R

### I.    INTRODUCTION

At issue in this case is the adoption and enforcement of workplace-safety exposure levels for

four chemical substances—silica, copper, n-propyl bromide ("nPB"), and diesel particulate matter

("DPM").  Plaintiffs are International Brominated Solvents Association ("IBSA"), National Mining

Association ("NMA"), AeroSafe Products, Inc., ("AeroSafe"), and Anchor Glass Container

Corporation ("Anchor Glass").  IBSA and NMA are trade associations whose members deal in the

four substances at issue.  They have consequently alleged claims on behalf of their members.

AeroSafe and Anchor Glass, each of whom deal in at least one of the substances at issue, allege

claims on their own behalf.  Plaintiffs collectively maintain that the workplace-safety exposure

levels, known as Threshold Limit Values ("TLVs"), are adopted by Defendant American Conference

of Governmental Industrial Hygienists ("ACGIH" or "Conference") and enforced by Defendant United States Department of Labor ("DOL" or "federal defendants") in violation of federal and state law. After this Court dismissed all but two claims from Plaintiffs' Amended Complaint (doc. 24), the parties engaged in extensive discovery, leading up to the filing of dispositive motions.

Currently pending before the Court are the parties' cross motions for summary judgment (docs. 203, 204, and 210). Specifically, Plaintiffs move for summary judgment on their Uniform Deceptive Trade Practices Act ("UDTPA") claim against ACGIH, ACGIH moves for summary judgment against Plaintiffs on said UDTPA claim, and DOL moves for summary judgment against Plaintiffs on the extant Administrative Procedures Act ("APA") claim. The parties have addressed the relevant legal issues through memoranda in support of their motions and oral argument at a hearing held on Tuesday, January 28, 2008. This Court has given careful consideration to these matters and presents its conclusion and disposition below.

## II. BACKGROUND

### A. Parties

Plaintiff IBSA is an Illinois non-profit trade association that represents the interests of businesses which produce, use, or otherwise deal in brominated products, including nPB, that are affected by ACGIH's TLVs. Plaintiff NMA, a non-profit, national trade association incorporated in Delaware, represents members who produce coal, metals, and minerals affected by the TLVs in question. Plaintiff AeroSafe is a Georgia corporation that sells products containing nPB to the aviation industry. Plaintiff Anchor Glass is a glass manufacturer incorporated in Delaware with facilities in the Middle District of Georgia. Anchor Glass is particularly concerned about the TLV for silica, a substance which is of critical importance to the glass industry.

The Department of Labor ("DOL") is a federal agency charged with promoting the welfare of the work force of the United States by, inter alia, ensuring safe working conditions. Defendant ACGIH is a private, non-profit association consisting of professionals who work in the field of occupational safety. Its members are employed in both the public and private sectors as well as in academia. Among the services performed by ACGIH is the creation and dissemination of TLVs, which are periodically included in generally available publications.

**B.      TLV Process**

The controversy in this case surrounds TLVs. A TLV is a numerical value assigned to a substance and is designed by ACGIH to suggest the maximum level at which a person may be exposed to a given substance and yet remain safe from the health risks associated with that substance. New TLVs are adopted, and current TLVs are reviewed, at the request of an ACGIH committee member. When such a request is made, the ACGIH Board places the substance on its "Under Study" list, which is then published each year in ACGIH's books, magazines, newsletters, and on its website. ACGIH invites the public to comment on its proposed TLVs and solicits information regarding the substances under study.

Once a substance has been posted to the "Under Study" list, an ACGIH subcommittee member is responsible for gathering supporting documentation for the proposed TLV and submitting a draft of the TLV to his or her subcommittee. The draft is then brought before the full committee. After the ACGIH Board of Directors ratifies a proposed TLV, a Notification of Intended Change ("NIC") is posted in various ACGIH publications and on its website.

TLV proposals retain their status as proposals for approximately one year while the public is invited to submit information relevant to their adoption. The posting of the NIC and the exchange

3

of public comment take place through ACGIH publications rather than through the Federal Register. Plaintiffs maintain that none of the information provided by the public is considered in the decision to adopt a final TLV; that the TLVs are false and deceptive because they are not supported by credible science; and that the TLVs are drafted in secret by undisclosed ACGIH members.

### C. Procedural History

Plaintiffs filed their original Complaint on November 17, 2004. Specifically, Plaintiffs' Complaint set forth five counts: Count I asserts a claim against all defendants for violations of the Federal Advisory Committee Act ("FACA"), 5 U.S.C. App. 2 § 1 et seq.; Count II asserts a FACA-based claim against all defendants under the APA, 5 U.S.C. §§ 702, 704; Count III asserts a claim against ACGIH for violations of Georgia's UDTPA, O.C.G.A. § 10-1-372; Count IV asserts a claim against ACGIH for tortious interference with contractual and business relations; and Count V asserts claims against the DOL for violations of the APA, the Federal Register Act, 44 U.S.C. § 1501 et seq., the Paperwork Reduction Act, 44 U.S.C. § 101 et seq., and the Due Process Clause of the Fifth Amendment to the United States Constitution. A day after filing their Complaint, Plaintiffs sought a temporary restraining order ("TRO") in an attempt to prevent ACGIH from publishing the controversial TLVs. The Court denied Plaintiffs' TRO motion, finding that, inter alia, Plaintiffs could not demonstrate a substantial likelihood of success on the merits.

Shortly thereafter, Plaintiffs amended their complaint as of right, and both ACGIH and federal defendants moved to dismiss the Amended Complaint (doc. 24). In an Order dated March 11, 2005 (doc. 70), the Court granted in part and denied in part the motions. Only two claims survived the motions to dismiss–one against ACGIH and one against DOL. In light of the relatively straightforward nature one would expect from a case with only two claims, the parties to this lawsuit

have engaged in numerous discovery disputes throughout the litigation of the case at bar. After numerous extensions to the dispositive motions deadline, the parties submitted their motions for summary judgment, which are currently pending before the Court.

## III.    SUMMARY JUDGMENT STANDARD

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," then summary judgment must be granted. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the non-moving party. Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1560 (11th Cir. 1995). The Court may not, however, make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" which would entitle the moving party to a judgment as a matter of law. Celotex, 477 U.S. at 323 (internal quotation marks omitted). If the moving party meets this burden, the burden then shifts to the non-moving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the non-moving party is not entitled to a judgment as a matter of law. Id. at 324-26. This evidence must consist of more than mere conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577

(11th Cir. 1991). Under this scheme summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

The filing of cross motions for summary judgment does not affect the Rule 56 standard: "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (3d ed. 1998). However, cross motions may be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. See United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." Joplin v. Bias, 631 F.2d 1235, 1237 (5th Cir. 1980).

Where one of the parties has disputed a specific fact and pointed to evidence in the record supporting its version of the events, the court will view all evidence and factual inferences in the light most favorable to that party, as required on an opposing party's motion for summary judgment. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. DISCUSSION

Before the Court are three separate summary judgment motions filed by Plaintiffs, by DOL, the federal defendant, and by ACGIH, the private defendant. Notwithstanding the duration of the prosecution of this case which commenced in 2004, and the vast amount of motions that have been filed in the interim, the instant case that at its outset appeared so complex has been pared down to

two issues, both of which will be addressed in the present Order. All that remains to be discussed substantively is Plaintiffs' claim that ACGIH violated the Georgia UDTPA and Plaintiffs' claim that DOL violated the APA.

### A. UDTPA

Plaintiffs and Defendant ACGIH have filed cross motions for summary judgment on the issue of Plaintiffs' UDTPA claim. Both parties have gone to great lengths to establish a factual record in support of their respective positions. The Court has been provided briefs three times as long as the Local Rules typically permit, as well as a tome disguised as a roadmap meant to lead the undersigned to a UDTPA violation. Before engaging in an intense factual critique, the Court will focus on whether the Georgia law is even applicable to the private defendant here. If it cannot be concluded that the UDTPA is inapplicable as a matter of law, then the Court will determine whether a genuine issue of material fact exists so as to preclude an entry of summary judgment.

The Court has had an opportunity to address the UDTPA issue at earlier stages of the litigation of this case. In an Order filed on November 26, 2004 (doc. 19), the Court denied a Plaintiffs' request for a TRO. As part of the analysis, the Court found that Plaintiffs could not demonstrate a likelihood of success on the merits because of the uncertainty of the application of the Georgia UDTPA to the facts of the case. Later, in an Order filed on March 11, 2005 (doc. 70), the Court denied in part a motion to dismiss that allowed Plaintiffs to proceed with discovery on what was described as "a novel claim under the UDTPA." (Order, doc. 70, at 34.) Now armed with evidence uncovered through the discovery process, the Court will determine whether the statute has any application here.

### 1. Plaintiffs' Claims

Plaintiffs accuse ACGIH of engaging in deceptive trade practices in violation of Georgia's Uniform Deceptive Trade Practices Act ("UDTPA"), O.C.G.A. § 10-1-372.[1] The UDTPA enumerates twelve trade practices that, when carried out in the course of a person's business, vocation, or occupation, can be deemed deceptive. Specifically, Plaintiffs trigger the application of the statute by alleging that ACGIH is in the business of creating, marketing, selling, and distributing TLVs, and that the Conference engages in certain practices that violate three provisions of Georgia deceptive trade practice law. By adopting TLVs that are supposedly not scientifically justified, Plaintiffs claim ACGIH violated the UDTPA in two ways:

> "First, [ACGIH] misrepresents, and has created a likelihood of confusion or misunderstanding about, its TLVs and TLV process in violation of O.C.G.A. §§ 10-1-372(a)(7) (misrepresenting quality or grade of products) and (a)(12) (creating likelihood of confusion). Its representations about what its TLVs are and how they are developed bear no relation to the reality Plaintiffs have discovered in the undisputed evidence. Second, the TLVs themselves are false and misleading representations of fact that disparage Plaintiffs' products in violation of O.C.G.A. § 10-1-372(a)(8), as they incorrectly state that safe levels of exposure to substances, products, and processes are unsafe."

(Pls' Mot. For Summ. Jmt., doc. 211, at 7.) Essentially, Plaintiffs argue that through the process of creating TLVs–and through the content of the TLVs themselves–ACGIH misrepresents and causes

---

[1] The Georgia UDTPA provides in pertinent part:
A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he . . . (7) Represents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; (8) Disparages the goods, services, or business of another by false or misleading representation of fact; . . . [or] (12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.
O.C.G.A. § 10-1-372(a)(7)-(8), (12).

confusion about its own products and at the same time, misrepresents and causes confusion about Plaintiffs' products.

### 2.    Plaintiffs' Summary Judgment Motion

Plaintiffs move this Court for an entry of summary judgment in their favor on Count III of their Amended Complaint alleging that ACGIH violated the Georgia UDTPA. Plaintiffs' first contention is that ACGIH's TLVs and the TLV process violate subparagraphs (a)(7) and (a)(12) of the UDTPA by making "numerous false claims that represent the standard, quality, grade, or style of the TLVs, including that outside output would be considered in the development of its TLVs; that its TLVs are developed without the influence of conflicts of interest and bias; that its TLVs have a sound, scientific basis; and that it and the individuals developing its TLVs are professional and qualified authorities." (Pls.' Mot. for Summ. Jmt., doc. 211, at 9.)

Plaintiffs aver that while ACGIH claims that it considers studies done by outside commentators when developing TLVs, they actually ignore contradictory scientific data submitted by others and release their publications anyway. The TLV methodology is further criticized by Plaintiffs' claim that the TLV authors are kept hidden from the public. Also, Plaintiffs allege that ACGIH violated its own procedures for preventing conflicts of interest by not reviewing disclosure forms meant to reveal conflicts and allowing potentially biased scientists to participate in creating TLVs. Plaintiffs critique of ACGIH's practices include the allegation that the TLVs do not have a sound, scientific basis because they do not subject their conclusions to an independent peer review, relegating the Conference's TLVs to conjecture not worthy of publication in a scientific journal. Finally, Plaintiffs allege that ACGIH requires no qualifications of its TLV authors, belying the claim that the Conference's TLV authors are capable scientists in their respective fields.

Considering the novelty of Plaintiffs' UDTPA claim, their brief is understandably devoid of authority for the position they propound. Instead, in their argument Plaintiffs attempt to align themselves and ACGIH as proper parties to a UDTPA suit, and then they advocate as broad a reading of the statute as possible so as to have it apply to ACGIH: "The UDTPA bars deceptive acts committed by ACGIH in the course of its 'business, vocation, or occupation.' O.C.G.A. § 10-1-372(a). While neither the statute nor the uniform law on which it was based further defines these terms, a plain reading of the law and the manner in which courts apply it shows that it applies to all commercial contexts." (Pls'. Mot. for Summ. Jmt., doc. 211, at 7.)

In support of their first contention, Plaintiffs rely on an opinion from the United States Bankruptcy Court for the Middle District of Georgia for the proposition that Plaintiffs need not be consumers of ACGIH products to proceed under the UDTPA. See Johnston Indus. Ala., Inc. v. Nat'l Contract Assocs. (In re Johnston Indus.), 300 B.R. 821, 826 (Bankr. M.D. Ga. 2003) ("[T]he Court finds that the 'consumer' issue is irrelevant to standing under Georgia's UDTPA. Rather, the plaintiff must be a person as defined by the UDTPA who is likely to be injured by the defendant's deceptive trade practice."). However, Plaintiffs fail to provide any cases in their brief that have applied the UDTPA to enjoin an entity from disseminating information in the form of opinions because of the entity's trade practices in formulating the opinions and its trade practices in the opinions themselves.

Plaintiffs' second contention is decidedly more tenuous. In addition to alleging violations of O.C.G.A. § 10-1-372(a)(7), (12), Plaintiffs contend that ACGIH also engaged in deceptive trade practices in violation of subparagraph (a)(8), which prohibits "[d]isparag[ing] the goods, services, or business of another by false or misleading representation of fact." O.C.G.A. § 10-1-372(a)(8).

Specifically, Plaintiffs assert that ACGIH's TLVs contain misrepresentations of fact "because they contradict government standards, are repudiated by their own authors, and are not supported by the prevailing scientific evidence." (Pls'. Mot. for Summ. Jmt., doc. 211, at 23.)

Again, Plaintiffs are unable to support this contention with any authority for the proposition that an entity's opinions can violate the UDTPA because said opinions are not in line with those espoused by a governmental agency. Instead, Plaintiffs rely on a critique of the conclusions reached by ACGIH in their TLVs based on the contrary views of scientists in the particular fields.

### 3. Defendant ACGIH's Summary Judgment Motion

Defendant ACGIH also moves this Court for an entry of summary judgment in its favor with respect to Plaintiffs' UDTPA claim. Defendant ACGIH proffers three arguments for why it is appropriate to enter judgment in its favor as a matter of law. First, ACGIH argues that it has a constitutional right to express its scientific opinions, and that they cannot be infringed upon by relief sought pursuant to the UDTPA. ACGIH avers that its TLVs contain opinions concerning issues of public concern, and, as such, are worthy of the First Amendment's protection. "Thus, statements on matters of public concern must be provable as false before they can serve as a basis for liability under state defamation laws." (Def's. Mot. for Summ. Jmt., doc. 205, at 41.) ACGIH goes a step further by asserting that in the area of medical and scientific research, creative ideas should not be restrained by fear of civil liability should they ultimately be proven incorrect.

Defendant ACGIH's next argument simply builds off the first. Provided the Court accepts ACGIH's argument that its TLVs are entitled to constitutional protections, it contends that they should prevail at this stage of the litigation because summary judgment is favored in First Amendment cases.

Defendant ACGIH's third argument is that Georgia UDTPA is simply inapplicable to the case at bar. ACGIH avers that the UDTPA is designed to protect businesses and consumers against unfair competition and deceptive advertising. With that as its goal, ACGIH contends that the General Assembly, the promulgators of the statute, never intended for it to apply to an entity such as itself that formulates and disseminates scientific opinions like their TLVs. "Thus, the UDTPA applies to deceptive actions by manufacturers, sellers, etc. intending to gain an unfair advantage for their products, which in turn causes harm to either a competitor or a consumer. The UDTPA does not apply to ACGIH since ACGIH is not in the business of manufacturing or selling the substances at issue. ACGIH's TLV's are simply not 'trade practices' taken 'in the course of [its] business, vocation, or occupation.'" (Def's. Mot. for Summ. Jmt., doc. 205, at 45.)

### 4.    O.C.G.A. 10-1-372(a)(7), (12)

The issue to be decided here is whether the formation and dissemination of opinions falls under the purview of the UDTPA. Put another way, can the UDTPA's injunctive relief be used to prevent a person from expressing his or her ideas if the person misrepresents the standard and quality of the opinions. First, that proposition requires this Court to deem ACGIH's TLVs as goods or services. Plaintiffs contend that ACGIH treats its TLVs as products, spending thousands of dollars marketing them in an effort to boost their sales. While Plaintiffs' contention is novel, it is not entirely unprecedented. In Hartigan v. Maclean Hunter Publ'g Corp., 457 N.E.2d 480 (Ill. App. Ct. 1983), an Illinois intermediate appellate court analyzed an Illinois deceptive trade practices statute similar to the Georgia law at issue here. The court in Hartigan determined that "advertisements of 'Red Book' [were] not merely the expressions of ideas but are representations concerning the qualities of a product and promoting its use, and are consequently witin the ambit

of the Act." Id. at 485. At issue in the Illinois case was "Red Book," a manual of vehicle pricing

information that the defendant publishers advertised as complete, current, accurate, and reliable.

The plaintiffs in the case alleged that the manual actually released inaccurate, unrealistic values, and

that the manual's publishers failed to base their valuations on studies in the relevant used car market.

Id. at 483. While the Illinois case and the case at bar are seemingly on point, it is the nature of the

defendant publishers that creates the distinction rendering Hartigan inapposite. The Illinois court

relied on the publisher's financial interest in the manual when determining that the statute was

applicable, and distinguished them from an entity whose mission was primarily to promote its ideas:

> In the instant case, defendants' advertising is not designed to promote ideas qua
> ideas, but rather is intended to further sales of 'Red Book' by inducing prospective
> purchasers to believe that the information which 'Red Book' contains is based on
> extensive market research of actual transactions. Thus, unlike the petitioner in
> Scientific defendants here derive a direct financial benefit from their allegedly
> deceptive advertising. Where the dissemination of ideas is so invested with a
> financial interest, the promulgation of those ideas may constitute an unfair or
> deceptive trade practice.

Id. at 485-86 (distinguishing proposition that "the publication, sale and distribution of matter

concerning an article of trade by a person not engaged or financially interested in commerce in that

trade is not an unfair or deceptive act or practice" as held by court in Scientific Mfg. Co. v. FTC,

124 F.2d 640, 644 (3d Cir. 1941)). This Court reasons that ACGIH, a non-profit association

comprised of a group of scientists that adopts workplace safety exposure levels, is more like an

entity designed to promote ideas than one that engages in deceptive advertising in an effort to derive

a financial benefit.

The Court struggles to accept Plaintiffs' characterization of their UDTPA claims, and

remains unconvinced that the cause of action created in the UDTPA should be able to stifle

ACGIH's dissemination of its opinions as to what exposure levels of certain substances are in fact

safe. Plaintiffs would have this Court make the unprecedented leap that ACGIH, which is neither in the business of selling or distributing the substances at issue, nor in the business of selling or distributing products similar to those sold and distributed by Plaintiffs, has engaged in trade practices that are likely to injure Plaintiffs in the future, making injunctive relief inappropriate. If anything, Plaintiffs novel UDTPA claim appears to be an attempt to make an end run around the prohibition on enjoining ACGIH's scientific opinions–as discussed below–by criticizing their marketing practices. The statute was designed to protect potential plaintiffs from suffering future injuries caused by the deceptive trade practices of another. If ACGIH was engaged in the production or distribution of products similar to those that Plaintiffs are in the business of producing, then the Court could justify enjoining trade practices that amounted to misrepresentations as to the quality and grade of said products. However, Plaintiffs here object to the content of the TLVs that articulate unfavorable workplace safety exposure levels. And without authority for the proposition that an entity's opinions can be stifled using the UDTPA, this Court will decline to do so here.

### 5. O.C.G.A. § 10-1-372(a)(8)

It cannot be said that the TLVs at issue in this case disparage Plaintiffs products in any way. This subsection requires a misrepresentation of fact, and this Court is convinced that ACGIH's TLVs are opinions, and can therefore contain no misleading representation of fact as contemplated by the UDTPA. See Moulton v. VC3, 2000 U.S. Dist. LEXIS 19916 (N.D. Ga. Nov. 6, 2000) ("It follows then that statements which are not defamatory because they are mere opinion cannot be the basis of an unfair trade practices claim that Defendant made false and misleading representations of fact.") Accordingly, this Court concludes that the UDTPA is inapplicable to ACGIH's formulation and dissemination of their TLVs–as well as to the TLVs themselves–and hereby grants

ACGIH's Motin for Summary Judgment.

**B.    APA**

DOL has filed a summary judgment motion in this case seeking an entry of judgment in their favor with respect to Count II of Plaintiffs' Amended Complaint–a claim for an alleged violation of the APA.   Plaintiffs' APA claim is the only remaining cause of action against any federal defendant after this Court's March 11, 2005 Order (doc. 70) granting in part and denying in part various motions to dismiss.   In the earlier Order, the Court addressed the APA claim and analyzed the framework and steps necessary to seek relief for the wrongs Plaintiffs alleged.

Originally, Plaintiffs alleged violations of FACA and APA against both ACGIH and DOL. In disposing of motions to dismiss, the Court determined that FACA was not the proper vehicle in which Plaintiffs could proceed against either party, noting the absence of a private right of action:

> The Court has carefully studied FACA's text and structure and concludes that neither evinces a congressional intent to confer on private litigants a right to enforce the statute's requirements.   The Court is further persuaded by, and references for support, the thoughtful analysis on this point contained in [the] TRO Order. Accordingly, Plaintiffs' FACA claims against ACGIH are dismissed.   Plaintiffs' FACA claims against the federal defendants are also dismissed to the extent that they are pursued solely under FACA.   If there is to be a viable basis for asserting FACA-based claims against ACGIH and the federal defendants, those claims must be pursued under the APA.

(Order, doc. 70, at 23.)   Later in its analysis, the Court determined that no APA claim could lie against ACGIH because it is not an agency, a requirement under the statute.   (Id. at 28.)   This left DOL as the only defendant facing Plaintiffs' APA cause of action.

**1.    Plaintiffs' Claims**

Plaintiffs accuse ACGIH–which they deem an advisory committee–of violating certain provisions of FACA.   The Federal Advisory Committee Act was promulgated in 1972 in response

to the escalating numbers of committees, boards, commissions, and councils that were established to advise the officers and agencies of the executive branch of the Federal Government. 5 U.S.C. App. 2 § 2(a); see Public Citizen v. U.S. Dep't of Justice, 491 U.S. 440, 459 (1989) ("FACA's principal purpose was to enhance the public accountability of advisory committees established by the Executive Branch and to reduce wasteful expenditures on them."). In an effort to reduce unnecessary costs and resources, FACA also called for the termination of any committee that ceased to comply with the purposes for which it was established. Id. § 2(b)(3). In furtherance of the efforts to promote productive and cost-effective administration, Congress declared that: "standards and uniform procedures should govern the establishment, operation, administration, and duration of advisory committees." Id. § 2(b)(4). To ensure this, Congress articulated certain procedures and requirements for advisory committees. Plaintiffs accuse ACGIH of running afoul of FACA by failing to comply with a variety of these requirements.

As discussed above, while FACA creates the limits placed on advisory committees, it does not confer on anyone a private right of action. Although Plaintiffs do not have a cause of action that arises under FACA, they are nevertheless entitled to enforce FACA's substantive requirements through the judicial review provisions of the APA. See Judicial Watch v. Nat'l Energy Policy Dev., 219 F. Supp. 2d 20 (D.D.C. 2002); see also Hernandez-Avalos v. INS, 50 F.3d 842, 846 ("[A] plaintiff who lacks a private right of action under the underlying statute can bring suit under the APA to enforce the statute . . . .").

The Administrative Procedures Act confers a right of judicial review on a person who feels aggrieved by an agency: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial

review thereof." 5 U.S.C. § 702. "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." Id. § 704.

Specifically, Plaintiffs contend that the federal defendants' reliance on and enforcement of ACGIH's allegedly tainted work product–the TLVs–violate § 706(2)(A) and (2)(D) of the APA, which provide in pertinent part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall (2) hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or] (D) without observance of procedure required by law . . . .

Id. § 706(2)(A), (D).

DOL's actions with respect to ACGIH's TLVs cannot provide the basis for a violation of the APA's "not in accordance with law" or "without observance of procedure required by law" provisions unless Plaintiffs can demonstrate that ACGIH is subject to FACA. This is because it is ACGIH's alleged transgressions in violation of FACA's requirements that trigger Plaintiffs' right to judicial review conferred by the APA. And it is this private right of action that makes the APA ultimately the proper vehicle for Plaintiffs' to proceed against the federal defendants.

Section 4 of FACA states that "[t]he provisions of this Act shall apply to each advisory committee." 5 U.S.C. App. 2 § 4. So for ACGIH to be bound by the Act's requirements, it must meet the definition of "advisory committee," as contemplated by the drafters of FACA: "The term 'advisory committee' means any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other such subgroup thereof (hereafter in this

paragraph referred to as 'committee'), which is (C) established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government . . . ." Id. § 3(2)(C). Subsection (2)(C) is the relevant provision in this case, and the issue of whether ACGIH was "established" by a federal agency or is "utilized by" a federal agency–and therefore deserving of advisory committee status–will ultimately determine the disposition of DOL's summary judgment motion.

### 2. DOL's Motion for Summary Judgment

DOL argues that it is entitled to summary judgment on the remaining APA claim it faces. DOL's argument is simply that FACA does not apply to ACGIH because it was neither established or utilized by DOL. Because Plaintiffs' APA claim against DOL is based on ACGIH's alleged FACA violations, if the Court determines that FACA does not actually apply to ACGIH, DOL will not be subject to APA liability and an entry of summary judgment in its favor will be appropriate. Accordingly, DOL's sole argument in support of its summary judgment motion is that ACGIH is not an advisory committee as contemplated by FACA because ACGIH was not established by a federal agency, nor is ACGIH utilized by a federal agency. Consequently, the Court's analysis will be limited to those two issues.

### A. Established

DOL argues that in the March 11, 2005 Order granting in part and denying part Defendants' motions to dismiss, this Court determined that ACGIH was not established by federal agency as contemplated by FACA. In the alternative, they argue that ACGIH was formed by federal, state, and local government officials, and that because of all the parties involved in its formation, it cannot be said that the Conference was established by a federal agency. DOL surmises that, at most,

18

Plaintiffs can argue that federal officials were involved in the creation of ACGIH; not enough to bring ACGIH within the purview of FACA using the established prong.

Plaintiffs challenge DOL's claim that the established prong has already been decided by this Court. They contend that the March 11, 2005 Order disposing of the established prong was limited in its scope, applying only to Plaintiff's unsupported allegation,[2] an allegation that they now provide support for in their response to DOL's summary judgment motion. Specifically, Plaintiffs now rely on information printed in a book to support their claim that ACGIH was established by DOL. Plaintiffs allege that the United States Public Health Service ("PHS"), a precursor to Health and Human Services ("HHS"), was involved in the creation of ACGIH–an allegation which if true, could satisfy the established prong of FACA.

As this Court has determined before, an advisory group is "established" by an agency for FACA purposes "only if it is actually formed by the agency." Byrd v. United States E.P.A., 174 F.3d 239, 245 (D.C. Cir. 1999); Public Citizen, 491 U.S. at 456-57. Plaintiffs attempt to distance the Court from such a narrow reading of the statute that would require that Plaintiffs demonstrate that DOL or some other federal agency was directly responsible for the formation of ACGIH, rather than simply being involved. In support of their position, Plaintiffs cite to a case from the United Stated

---

[2] In the Order disposing of the motions to dismiss, the Court held:
Plaintiffs' amended complaint contains no further factual support for this allegation, however. Though the Court must accept well-pleaded factual allegations as true for purposes of ruling on a motion to dismiss, it is not bound to give credence to conclusory allegations. See Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002). Accordingly, to the extent that Plaintiffs premise their APA claim on the unsupported allegation that ACGIH was established by a federal agency, the Court finds that Plaintiffs have failed to satisfy the requisite showing under the 'established' prong of subsection (2)(C)."
(Order, doc. 70, at 31-32.)

Court of Appeals for the Eleventh Circuit:

> To construe the statutory word "established" in that restrictive, artificial way runs counter to the teachings of the Public Citizen that "established" was used "in an expanded sense of the word," and "in a generous sense," and the word should be applied with a "broad understanding" in order to encompass all such committees formed directly or indirectly by the federal government or its agencies.

Miccosukee Tribe of Indians v. S. Everglades Restoration Alliance, 304 F.3d 1076, 1085 (11th Cir. 2002) (citing Public Citizen, 491 U.S. at 462-63).

Nevertheless, the Court rejects Plaintiffs' contention that ACGIH was established by a federal agency. Without addressing the issue of the admissibility of Plaintiffs' evidence, the Court concludes that no genuine issue of material fact exists, and, as a matter of law, ACGIH was not established by a federal agency as contemplated by Congress in FACA. While it is arguable that the issue has already been resolved in an earlier Order by this Court, the evidence presented by Plaintiffs suggests that officials from state and local governments were involved in the establishment of ACGIH. Even if the Court were to take Plaintiffs' entire account of the creation of ACGIH as true, their position only strengthens DOL's position that ACGIH was not established by a federal agency, even applying the broad understanding articulated by the Eleventh Circuit. Thus, for Plaintiffs' APA claim to survive summary judgment, they must demonstrate that a genuine issue of material fact must exists as to whether DOL "utilizes" ACGIH as an advisory committee.

**B.     Utilized by**

The federal defendants argue that not only was ACGIH not established by a federal agency, but that it is not utilized by one either. In support of their contention, DOL presents four factors that demonstrate its dealings with ACGIH do not amount to utilization. First, DOL notes its lack of any significant monetary support of ACGIH. DOL claims that its only financial support of ACGIH is

in the form of publication purchases that total a minuscule percentage of ACGIH's budget. Second, DOL claims that its officials do not constitute a significant presence on the ACGIH board. According to DOL, its officials occasionally serve on the ACGIH board, but at no time in the past eight years have more than three DOL employees served simultaneously. Third, DOL claims that its employees do not serve on TLV committees on a regular basis. Specifically, DOL acknowledges that only three of its employees have served on TLV committees since 1999. Finally, DOL argues that its employees have never made any attempt to control or manipulate ACGIH activities nor have they ever conducted joint meetings.

In response, Plaintiffs address the factors presented by DOL and argue that they in fact cut towards a finding that DOL utilized ACGIH in violation of FACA. Regarding limited board membership by DOL officials, Plaintiffs point to DOL employees who served as chair of the ACGIH board as evidence of actual management of an advisory committee. Concerning the controversial TLVs, Plaintiffs argue that federal officials acted as committee members as well as authors of TLVs that did not undergo any independent peer review. Plaintiffs contend that the autonomy given DOL officials to draft TLVs that were published by ACGIH supports their claim that ACGIH was under the control of a federal agency.

This Court had an opportunity to address in some detail the relevant case law with respect to the "utilized" prong of the FACA framework. This Court adopts the analysis from the March 11, 2005 Order that has also been essentially agreed upon by the parties:

> The U.S. Court of Appeals for the District of Columbia Circuit has decided a handful of cases interpreting the "utilized" prong of § 3(2)(C). See Byrd, 174 F.3d 239; see also Animal Legal Def. Fund, Inc. v. Shalala, 104 F.3d 424 (D.C. Cir. 1997); Wash. Legal Found. v. U.S. Sent. Comm'n, 17 F.3d 1446 (D.C. Cir. 1994); Food Chem. News v. Young, 900 F.2d 328 (D.C. Cir. 1990). In Young, the court held that the term "'utilized' encompasses a group organized by a nongovernmental

21

entity but nonetheless so 'closely tied' to an agency as to be amenable to 'strict management by agency officials.'" 900 F.2d at 332-33. In <u>WLF,</u> the court observed that the word "utilized" contemplates "a stringent standard, denoting something along the lines of actual management or control of the advisory committee." 17 F.3d at 1450. Finally, the court noted in <u>Byrd</u> that "participation by an agency or even an agency's 'significant influence' over a committee's deliberations does not qualify as management and control such that the committee is utilized by the agency under FACA." 174 F.3d at 246. No court in the Eleventh Circuit appears to have taken a differing view.

(Order, doc. 70, at 32-33.)

The Court finds that Plaintiffs have failed to demonstrate the existence of genuine issues of material fact that would preclude the undersigned from granting judgment as a matter of law in favor of DOL. While Plaintiffs certainly presented evidence of involvement of DOL officials with ACGIH committees, it cannot be said that the board membership and authorship of TLVs by DOL agents rendered ACGIH amenable to the strict management of DOL officials. The Court was persuaded somewhat by Plaintiffs assertions that federal agencies request that ACGIH develop certain TLVs. However, it appears as though the requests were just that, and Plaintiffs never demonstrated that DOL was simply using ACGIH to promote its own agenda, which would signal actual management or control of ACGIH. Accordingly, the conclusion of the undersigned is that DOL did not utilize ACGIH as contemplated by FACA, thereby precluding the Conference's characterization as an advisory committee and the violation of certain FACA provisions that could ultimately subject DOL to APA liability.

### C.     Renewal of Claims

In response to DOL's summary judgment motion, Plaintiffs seek to renew claims for violations of the Federal Register Act and of the Due Process Clause that were disposed of in the March 11 Order for being untimely. Plaintiffs cite to a case from the United States Court of Appeals

for the D.C. Circuit for the proposition that the time limits that constrained them at the Motion to Dismiss stage were no longer applicable. The Court disagrees with Plaintiffs assessment that this case somehow breathes life into expired claims, and will not entertain any discussion towards a count already dismissed.

**V.      CONCLUSION**

For the foregoing reasons, the Court grants Defendant ACGIH's Motion for Summary Judgment (doc. 204), denies Plaintiffs' Motion for Summary Judgment (doc. 210), and grants Defendant DOL's Motion for Summary Judgment (doc. 203).

SO ORDERED, this 2nd day of May, 2008.

/s/ *Hugh Lawson*
HUGH LAWSON, JUDGE
UNITED STATES DISTRICT COURT

HL/cbb